The next matter, No. 24-1230, Alexander Reheb v. Delaware North Companies, Inc., Boston. At this time, would Counsel for the Appellant please come to the podium and introduce himself on the record to begin. May it please the Court, my name is Cass B. Harrison. I represent the plaintiff, Appellant Alexander Reheb. Do you want to reserve any time for rebuttal, Counsel? I would very much like to do that, Your Honor. How many minutes? Two minutes. You may. Thank you. Your Honors, in this case, there's no dispute that physical harm occurred to the plaintiff who was a customer of the defendant, T.D. Gardner. And there's no dispute that a spill by another customer caused the plaintiff's injury. The question is whether the regularity of customer spills at T.D. Gardner. No, that's not the question. The question is whether we are going to apply an exception to the normal restatement standard that the owner of premises must be shown to have notice. So could you address that? Yes. So the requirement for applying the mode of operation theory is that the hazardous condition is something that the owner should have notice of based on the regularity of the hazard occurring. And in this instance, spills were occurring so frequently that the defendant had 80 moppers mopping up spills and their testimony was that spills were occurring constantly. Counsel, can I ask you what I think is sort of the heart of the issue here based on the district court's decision? We have a decision from the SJC, Sarkisian, where the SJC says specifically, and I'm going to quote here, we dispel any notion that the mode of operation theory would apply whenever patrons are permitted to carry their own drinks from a concession stand to their seats in a sporting event. I mean, they talk about the specific situation in this case and they dispel the notion, in their words, that the mode of operation theory would apply. So I think the district court understandably felt that it needed to follow that statement. So can you address that? Because we have to obviously apply Massachusetts law here. Why are we not restricted by that statement in Sarkisian? What the SJC said is that the mode of operation would not automatically apply in a sports arena, but that it would depend upon the frequency, the foreseeability, the regularity. So what's unique about TD Garden from any other sporting location? I'm sorry? What's unique about TD Garden that's different than any other sports venue? What is a more important question is, what is the distinction between TD Garden and the nightclub in Sarkisian? Sarkisian, there were frequent spills. It was dark. You couldn't see what was wet on the floor. And a person was injured. In TD Garden? No, no. I'm quoting from Sarkisian. A plaintiff may get to the jury, however, by showing the patrons who wish to travel between the bar and their seats are forced as a recurring feature of the mode of operation to navigate in the dark through a crowd of dancing people who are holding plastic cups filled with liquid over a wooden floor.   So compare Delaware North to navigate in the dark through a crowd of dancing people who are holding plastic cups filled with liquid and a wooden floor. So at Delaware North, patrons were required to purchase their beverages at a concession stand, and then they were forced to carry those beverages in open containers to their seat. And in the course of that traveling, spills were occurring so frequently that moppers were mopping up constantly. The SJC wouldn't have read it that way if it was just spills writ large, just spills happen. They said spills are happening because of certain features that Judge Lynch just said, like you have to walk through people whose arms are flailing around. And I don't see why in a wide concourse where you're just being given a drink, what is the special circumstance beyond the fact of spill, which based on what I just heard is not enough, makes this case different. The special circumstances is that what the moppers are testifying to is that patrons are allowed to carry two and three beverages at one time. They're spilling because there's no ability to contain the beverages. They're walking around, they're dropping, they're trying to carry more than what is reasonable to carry, and spills are occurring so frequently. The general public, and the plaintiff in this case, has no idea how many spills are occurring constantly in this venue. They're unaware of the danger that someone seconds in front of them is going to spill. And if the beverages were sold in containers that didn't allow such frequency of spills, it would be more reasonable. Why is your argument not applied to every sports venue that has a mass number of people showing up? Because the SJC then writes, it's not going to be sports venues where we're serving drinks in sort of the normal form. And everything you told me, I've been to many sporting events, sounds like the normal form. So what's the difference? Not every sporting venue sells beverages in open cups without lids. The Amica Pavilion in Providence is a 14,000-seat venue. They sell every beverage in a can or a bottle. The only beverage that's not sold in a can or a bottle at the Amica Pavilion is Dell's Lemonade in a small cup. Counsel, can I ask you, though, because, again, when I read Sarkisian, it seemed to me that what the court was saying is the circumstance there was such that a patron would never be able to establish what they needed to establish under the traditional test because there would be no way to find out. It was dimly lit, the strobe light, no way to find out how long the spill had been on the floor. Whereas in TD Garden, apparently there are video cameras. It's not dimly lit. And your client knew exactly how long, down to the seconds, that spill had been on the floor. So it seemed that the SGC said we have to apply the mode of operation theory because the traditional one, it won't work. Plaintiffs will never be able to recover. So can you just really address that sort of practical, factual difference? This is not a dimly lit place. They can see the spills, and even more importantly, plaintiffs are able to figure out exactly how long the spill has been there. At Delaware North, the TD Garden, the floors are white tile. It's brightly lit. If a beer or a liquid is spilled on the floor, if it's Coca-Cola, maybe you could see it. But beer is practically, you just can't see it on the floor. And the only reason my client knew what he slipped on is by viewing video after the fact. So this is a hazard that the general public cannot see. They're looking up at signage, trying to figure out where their seat is located. They're not looking at the floor. My client had no idea that this hazard was in front of him. And even AD moppers couldn't prevent that hazard from occurring because spills were so frequent. Your client chose the federal venue, right? This wasn't removed here, right? Correct. And so you chose not to try to take this up through the Massachusetts system and see if the SJC wanted to walk away from what it said in Sarkeesian about this? Well, my client is a Rhode Island resident. You have every right to do it. That was a choice you made. He also, there is no mode of operation recognized in Rhode Island state court. Right, but you could have gone to Massachusetts state court where this case would have ended at the SJC. You brought it here, or it ends with us, right? Just because of diversity of jurisdictions. Thank you, Counselor. Thank you.  Counsel for the appellee, please introduce yourself on the record to begin. Good morning, Your Honors. May it please the Court, Joseph Unetti, and I represent the appellee, Delaware North Companies, Inc., Boston. I think that the district court got it right in this case, and that really only two key points from the district court's decision are, one, that a federal court sitting in diversity of jurisdiction has to apply the law of the highest court in the state, and if the highest court of the state has it opined, then they need to predict reasonably what they would do. And there's no better example of what the court would do than the Sarkeesian case where it specifically and illicitly said this is not going to apply automatically simply because you have to walk from a concession stand to your seat. The big difference in this case, and it's not on the record, there's nowhere there, is Mr. Hebb testified in this case that he had no difficulty getting from point to A. So he bought a beer, some food, he walked across the concourse, that's when he slipped, but it was well lit. The video shows that he had access to the video. A patron had spilled a beer, had dropped something, and bent over to pick it up. It wasn't a nightclub scenario. It was dark. The patron didn't get jostled. He didn't have to navigate through a crowded concourse. The big difference in Sarkeesian and where the recurring feature became a big deal is there were two bars at the nightclub in the Sarkeesian course, and the only way, once you got a drink, to get away from the bar was to cross this dark dance floor, strobe lights flashing, really diverting your attention away to what you could see. You would never be able to find the spill. Why is Wiley, though, different? I have trouble distinguishing Wiley. You can tell me it's about gravel, but that doesn't tell me very much. It seems like there was gravel, and people might kick it, and they were walking around trying to keep the gravel off, but it was outside and light, and you could see the gravel. So a lot of the things you just said, the SJC seemed to walk away a little bit from some of those extraordinary factors that Judge Lynch listed in Sarkeesian to something that seemed milder to me. And then what concerns me is Judge Discordy, who wrote the language that Judge Rickleman read, which is sort of the key so far of the discussion, now becomes the dissenter and says the SJC has gone too far, my colleagues have gone too far, so we're in an odd situation in some sense of what to make of the status of what Justice Cordy said. Yes, so I think you're referencing the Bowers case where the gravel. So one of the distinctions in Bowers, and I don't remember the exact details where, in the Bowers case, the defendant, I forget whether it was a Target store or what store it was. Agway. It was actually deposed. And in that, that defendant testified about a specific policy they had that, hey, we're aware of this specific issue where gravel is being kicked by patrons who are actually going into our landscaping area, and it's a recognized hazard that they have, and they created an actual policy where I think they said we're going to have a store employee actually go out there on the sidewalk every five minutes or 15 minutes. It was unspecified time. The difference with Delaware North, we're. But you do that, right? What are the people doing who are monitoring for spills? Well, so it's a different scenario. So we contract with a company, UG2, for housekeeping and facility services at the TD Garden. They do the entire garden, including events. I don't think the record indicates that there's really 80 moppers running around. We have sweepers, moppers. Right, but part of their job is to monitor for hazards like spills and clean them up, I assume. Correct. Part of it is to identify hazards, and if there is one there, they put a white coat on it. Because they know there might be one. And it could be spills. It's not necessarily beer that's spilling. It's ice cream, kids with popcorn, kids dropping things. I know you said you've gone to some sporting events. They give you the program, a variety of different things. But drink spills is one of them. Correct. They're aware of it. Correct. They're aware gravel gets on the path. Correct. They send people around to pick it up, just like they mop up the spills. So, again, what's the difference? I think the difference is getting into, once we know about the spills, you're getting at the second question is, were we reasonable in how we addressed it? But, counsel, the district court stuck to the first question. And I think what I'm struggling with is the Bowers case is decided after Circassian. It's the later case. And it just says, you know, very clearly that whether an entity's mode of operation makes a dangerous condition reasonably foreseeable is a question of fact for the jury. I mean, it just says that it doesn't seem to limit or condition that in any way, and that's the later case. So can you just explain for us? We have to predict how the SJC would rule here. How should we be reconciling the Circassian and Bowers decisions? I think how you essentially get there is, what is the recurring feature of the business? And in this case, I think the district court recognized and the Supreme Court of Massachusetts correctly recognized that the recurring feature isn't actually selling the drink and the fact that there's a spill and someone falls isn't really the question. The question is, what's the recurring feature? And here we have concession stands spread all around. We're not forcing patrons to walk through, you know, super-crowded areas. It's not dark. There's not distractions. So I think that's one difference. In Bowers, they had to walk essentially for this landscaping area. They were encountering this. They knew it. There was a policy there to address it. Can I get out of TD Garden without walking through the concourse? Yes and no. It depends where you're sitting, you know, on that. There are obviously ADA compliance with our escalators. You know, there are different ways you can get around. But most people walk through the concourse. But the general public for the most part is going to be in the concourse to get to their seats from, you know, Causeway Street. I didn't read Bowers to overrule the limitation in Sarkeesian. They certainly don't say that. They just have a disagreement with the dissent about a different type of case involving gravel and sidewalks and not spilled alcoholic or other beverages. Is it, in fact, true that no lids are offered for the plastic cups? So I can answer the question for you. It's not anywhere in the record because my client was never asked. I think we were asked in an interrogatory, do we sell beer without lids? We sell a variety of drinks in a variety of different locations. Beer is sold without a lid on it. If you've ever been to a sporting event, soda is sold with a lid on it with a straw for kids. Some stuff with bottled water is sold with a cap on it. And there's been nothing in there that shows, hey, there's some difference. You could have a bottle of water with a cap on it. Someone walks through the concession stand and takes the cap off it. You could sell beer in a can. They open the can. So what containers, and I don't think necessarily is impactful on what the spill is. But we do sell beer without lids. We do sell other drinks, again, depending on where you're sitting and what concession stands you go to. Are lids available? The concession stands have lids. I can say the plaintiff was asked this. He didn't ask for a lid. Lids for the cups in which beer is provided? They're essentially 12-ounce cups. They have water. They do have lids. I don't know 100% if the lids would fit on the beer. It wouldn't be very helpful. It wasn't developed in this case. My client was never deposed. And that's one of the distinctions of ours is the defendant was actually deposed and all these policies were elicited. As opposed to here, we had a couple of employees out of a massive company that talked about, you know, we station them all over the TD Garden. It's a nine-level building. So when we say 80 mockers, they're not all running around the concourse. And I think the district court was correct, and it did distinguish Bowers. It would be odd that the Supreme Court would come out one way and say X and then having another opinion right away and not at least take the step to rein that back. There is a case. It's unpublished opinion from the appeals court in Massachusetts. It's Catan v. Stop-and-Shop. It's 92 Mass. Appellate Court, 11-29. It's a 2018 decision. It's 92 Mass. Appellate Court, 11-29, 2018. Yeah, I read the case. And that pulled back a little off Bowers. I think after Bowers they tried to expand it. This was an advertising sign in a supermarket that had fallen over. The white part blended into the floor and someone fell. Again, it was a hazardous condition. There's no doubt about that. But they kind of reined back on that and got back to what is the recurring feature of the business, and they said essentially this is not a recurring feature. Isn't it, though, the appeals court rule that if it is not published, it's not to be cited unless there is a case substantially similar on the facts? Correct. It's not an opinion. But as far as we're talking about Bowers, the one case of Bowers that's kind of gone outside the realm of the evidence. But to the extent we're talking about predictions, I guess it's irrelevant. Yeah, I think you said it best in the prior argument, Judge Lynch, where the circuit court follows the Supreme Court, including DICTA, in their holdings. And in this case— Nice to know you were listening. I was listening. You know, there's no— You were a captive audience. That was great. Albeit in DICTA in the Sarkeesian case essentially said the facts of this case, which are almost identical as far as the beer sales or the alcohol sales, there is simply no recurring feature. Yes, there are spills. What do you mean by recurring feature? I mean selling beer at a sporting event is a recurring feature of the business. It is a recurring feature. And so what they said is that selling beer to a lot of people walking from a concession stand to their seat, spills conceivable, 100%. We're not disputing that. That's not the feature that gets you to a jury. That's where they said there has to be more. And in this case, at least in Sarkeesian, the recurring feature is the strobe lights dimly lit. And if I said you have to walk up the stairs of TD Garden, which are pretty steep to the balcony, would that be the recurring feature? I guess I'm trying to put an understanding of what that means. Like I, TD Garden, know that lots of people who sit way up high are going to buy beer in the concourse and walk up the steep stairs with cups full of liquid on uneven ground, it's going to spill. What does that mean? I think, again, there would have to be more than simply just walking up the stairs. I mean, again, the stairs are wide there. There's sides for people to walk up and walk down both sides. And they have railings. They do have railings. They're ADA railings, so they go for about, say, four feet, then there's a gap, then there's four feet, because people have to be able to crisscross the aisle. Thank you, Counsel. Thank you, Your Honors. Thank you, Counsel. At this time, Counsel, for the appellant, please reintroduce yourself on the record. You have a two-minute rebuttal. Thank you very much. May I please court Casby Harrison for the appellant? I would like to say that there was nothing in the record in this case that indicated that lids were even available to customers, and there was deposition testimony by one of the moppers who confirmed that customers walk around with beers that are without lids. And I would like to say that the plaintiff's position is that it isn't necessary for it to be dark or for there to be strobe lights in order for a wet spill to constitute a hazard in a place of public accommodation. The issue here is the reoccurring frequency of the spills and their foreseeability. If frequency and foreseeability is what gets you to a jury, then Alex Rahib's case should get to a jury. And finally, I'd like to point out that even though the trial court stated that it was not going to deliberate on reasonableness of the defendant, it commented on five different aspects, all of which implicate reasonableness. The trial court talked about the importance of establishing proof of age for purchasing alcohol and why concession stands were more appropriate for that and impractical for vendors to be walking up and down aisles, concession stands more appropriate. Alcohol being sold to intoxicated customers, concession stands more appropriate to prevent that. Security concerns about beer cans being used as projectiles thrown by disgruntled fans. Plastic lids presenting environmental concerns. But that's just the jury question about whether there's a better way. That's not the question of whether this was a sort of dangerous situation that triggers the first part. That's all the second part. Correct, but the problem is every one of those observations, there was no evidence in the record whatsoever of any of those things. Neither party argued any of those things. Those were inferences. Yeah, and the opinion would have been a lot better off if there hadn't been that speculation. But it's followed by, in any event, it's not up to this court to figure out the policy considerations. It's up to the legislature and the Massachusetts courts. And then it referred again to the Sarkeesian. So I don't think that argument advances your cause. Thank you, Your Honors. Thank you, Counsel. Thank you, Counsel. That concludes argument in this case.